IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LEONARD JOHN SUNDSMO,

                Plaintiff,

    v.

KEVIN CALKINS, DEREK BURCH, MIKE PICHLER,
MARK R. SCHAUF, RYAN LABROSCIAN, and
ELENA LEON,

                Defendants.

OPINION & ORDER

15-cv-2-jdp

Plaintiff Leonard John Sundsmo brings this action against law enforcement officials from the city of Baraboo, Sauk County, and state of Wisconsin for an allegedly illegal search and arrest of plaintiff on November 4, 2014.

Defendant Derek Burch has filed a motion to dismiss plaintiff's claims against him, and defendants Elena Leon and Kevin Calkins have filed a motion for summary judgment on "threshold issues" such as qualified immunity. After considering the parties' motions, I will dismiss several of plaintiff's claims. Because defendant Burch contends that plaintiff did not properly serve him with the complaint, I will direct plaintiff to provide further information about service.

PRELIMINARY MATTERS

A.  Recusal

Before addressing defendants' motions, I must consider plaintiff's request for my recusal. Plaintiff argues in responding to defendants Calkins and Leon's motion for summary judgment that I am biased against him because I have required him to submit his filings with

his own written signature rather than with the "/s/" notation commonly used in electronic filing, while defendants continue to be allowed to have their attorneys submit their filings using that notation in the signature block. Dkt. 100, at 1-3.

Although plaintiff does not file a separate formal motion, he does invoke 28 U.S.C. § 455 ("Disqualification of justice, judge, or magistrate judge"), so I will construe his response as including a renewed motion for my recusal. I will deny this motion because my ruling on the form of plaintiff's signature does not reasonably indicate any bias against plaintiff. My ruling was a response to the improper submission of documents by plaintiff's father, who is not a lawyer. Dkt. 76, at 4-5. Defendants' submissions are not the subject of similar concerns, and defendants may continue to submit documents with electronic signatures in compliance with the court's electronic filing rules.

## B.  Facts

Under this court's procedures for briefing summary judgment motions, plaintiff was given the opportunity to dispute the proposed findings of fact submitted by defendants Calkins and Leon as well as submit his own proposed findings. *See* Dkt. 82, at 15-23 (attachments to the preliminary pretrial conference order detailing the court's summary judgment procedures). Plaintiff does not provide any responses or proposed findings disputing defendants' version of events. Rather, he contends that defendants' proposed findings are improper because they were submitted by counsel. *See* Dkt. 101, at 5 ("Statement of Counsel can never be entered into the Evidence file, as it is nothing but hearsay, and not up to the level of Fact."). Plaintiff responded to virtually all of defendants' proposed findings by stating "Objection, making legal argument on hearsay evidence." *See* Dkt. 102, at 4-7.

Plaintiff cites to *Porter v. Porter*, 274 N.W.2d 235 (N.D. 1979), and *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964), to support his argument that defendants improperly filed their materials, but he misreads both cases. In *Porter*, the court disapproved of an attorney "filing an affidavit on behalf of his client asserting the status of that client," 274 N.W.2d at 243 n.1, which is not what is happening in the present case. The proposed findings of fact submitted by counsel for the state defendants are not counsel's first-hand observations, they are summaries of affidavits and other evidence. In *Trinsey*, the court stated that "[s]tatements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment." 229 F. Supp. at 649. This is an uncontroversial statement that *argument* by counsel is not the same as *evidence*. There is nothing improper about counsel submitting proposed findings of fact, so long as counsel follows this court's procedures by explaining what evidence supports each proposed finding.

Plaintiff also raises specific objections to some of the affidavits underpinning defendants' proposed findings, contending that they are not properly notarized. Plaintiff argues, "As to Notary Public at bottom of Pg 8., Affiant Objects, does not identify notary with proper, wet ink signature, and there is no Notary Seal/stamp to be seen." *See, e.g.*, Dkt. 104, at 3.

Plaintiff is correct that the electronic signatures of the notary on the affidavits do not include a "wet ink" signature or the notary's seal. But this is not required by the court's electronic filing rules: "A document requiring the signature of a person who is not a Filing User" allows for an electronic signature so long as the filer keeps a hard copy of the original document that has a signature. *See* Electronic Filing Procedures, Western District of Wisconsin, http://www.wiwd.uscourts.gov/electronic-filing-procedures#E._Signatures (last

visited, Mar. 1, 2016). Even if I considered the missing seal to be a defect, this court should not strike affidavits for such minor technical deficiencies. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied."); *see also Peters v. United States*, 408 F.2d 719, 722 (Ct. Cl. 1969) ("[T]he absence of the formal requirements of a jurat in . . . sworn affidavits [does] not invalidate the statements or render them inadmissible [if] they were actually sworn to before an officer authorized to administer an oath.").

As shown below, I have broken up the facts provided by defendants Calkins and Leon into three sections. The first is background information about the parties. The second is comprised of proposed findings largely dealing with defendant Leon's involvement as plaintiff's probation agent. These facts are properly submitted and undisputed.

The third section is largely taken from defendant Burch's police report. Defendant Calkins submits proposed findings discussing his role advising defendant Burch about whether he could enter the building in which plaintiff was staying and arrest him. Calkins attempts to relay portions of Burch's report as proposed findings by saying that Burch "would have informed [him], at a minimum, of the following information related in [Burch's report]," *Id.*, at ¶ 47. But this is not something to which Calkins can truthfully testify; he states that he "recalls having a conversation with Burch" the night of the arrest, but admits that he "does not have specific recollections of the details of that conversation." *Id.*, at ¶¶ 41-42. So I will not consider the facts contained in the report as proper proposed findings of fact. As discussed further below, this does not save plaintiff from dismissal of his claims against Leon and Calkins.

4

Similarly, defendant Burch contends that the facts in his report can be considered in his motion to dismiss because plaintiff quotes sections of the report in his complaint. But I will not consider these quotations as definitive assertions of what plaintiff believed happened because I hesitate to assume that plaintiff concedes every fact spelled out in Burch's report merely because he has quoted the report in his complaint. I can reasonably infer that plaintiff quotes the report to show what law enforcement *claims* happened as opposed to conceding that everything in the report is true.

Nonetheless, I include these facts for illustrative purposes. Because plaintiff is not proceeding with this case *in forma pauperis* and was not a prisoner when he filed the complaint, this court did not screen plaintiff's complaint under 28 U.S.C. §§ 1915 or 1915A, and so I have not issued an order describing the contours of plaintiff's claims. Now that some of the defendants have filed dispositive motions, the police report is useful in considering what types of claims plaintiff seeks to bring against each defendant.

FACTS

**A. Parties**

Plaintiff Leonard John Sundsmo is currently a state of Wisconsin prisoner incarcerated at the Prairie du Chien Correctional Institution. At the time of the events of this case, he lived in Prairie du Sac, Wisconsin. Defendant Elena Leon is a probation and parole agent for the Division of Community Corrections (DCC) within the state Department of Corrections. Derek Burch was a Sauk County deputy. Kevin Calkins was the Sauk County district attorney. The remaining three defendants worked for the Baraboo Police Department.

Ryan Labroscian was a sergeant, Mike Pichler was an officer, and Mark Schauf was the police chief.

## B. Defendants Leon and Calkins's proposed findings

At the time of the events described in plaintiff's complaint, plaintiff was on probation for a felony bail jumping conviction. Defendant Leon was plaintiff's probation agent. As a condition of probation, plaintiff had to keep Leon informed about any changes to his residence and "whereabouts." Plaintiff lived in Prairie du Sac, Wisconsin, with his sister and her family. In September 2014, Leon made an initial home visit to this address. Plaintiff also made office visits for his probation.

On October 28, 2014, again Leon visited plaintiff's home, but plaintiff was not there. A child (who Leon thought was plaintiff's nephew) answered the door. Leon asked if the child could pass on a message to plaintiff, but the child said that plaintiff no longer lived there. The next day, Leon received two messages from plaintiff apologizing for not being home at the time of his home visit, but he did not give Leon a phone number at which he could be reached. On October 30, 2014, Leon talked to a friend of plaintiff's family, who stated that plaintiff no longer lived with his sister. Plaintiff left more messages for Leon, but did not say where he was staying or provide a phone number.

On October 31, 2014, defendant Leon met with her supervisor to discuss plaintiff's case. They agreed that the DCC should issue an "apprehension request" directing law enforcement personnel to take plaintiff into custody for violating his probation. The apprehension request was issued. The "Warrant Abstract" section of the request form had the "felony" box checked, because of plaintiff's felony bail jumping conviction.

Plaintiff was arrested on November 4, 2014, at the home of Angela Mazerek, a Baraboo resident. On November 6, 2014, while plaintiff was in custody, he made the following statement to probation staff:

> Over the past month I stay[ed] at my girlfriend's, Angela in Baraboo approx 2-3 times a week. My address is still in Sauk City. I tore my ACL & have needed her assistance. I missed my HV because I though[t] it was on Thursday. I called my agent when I got the message. Surgery coming up next week.

Dkt. 89, at 15, ¶ 64. Defendant Leon's supervisor released plaintiff from jail.

## C.  Defendant Burch's report

Defendant Burch was on duty on November 4, 2014. He received a "check welfare" request for Angela Mazerek. The person requesting the welfare check (named Bob in the report) reported that he had received a threatening message from plaintiff, who had taken Mazerek's cell phone from her. Burch recognized plaintiff's name from previous contacts. He checked plaintiff's driving status and warrant history, and discovered an "active felony warrant" from the Department of Corrections issued on October 31, 2014. Burch called the Baraboo Police Department to ask for assistance, both because of plaintiff's warrant and because his previous encounters with Mazerek had "not been friendly."

Defendant Burch arrived at Mazerek's residence at about 9:57 p.m. Baraboo police officers defendant Pichler and Ellefson (not a defendant) also arrived. No one answered the door, but Burch saw that there was a television on inside. Pichler shined his flashlight into the residence. A hallway light turned on, but no one answered the door.

Defendant Burch called Bob, who told Burch that "he was concerned because he believed that there was a disturbance between Leonard and Angela several days ago when Leonard had taken her phone after he had physically assaulted her and then took her phone

7

so she could not call law enforcement." Dkt. 1-1, at 2. Bob thought that a similar incident could have been happening because plaintiff had just sent him several voice mail messages "in a threatening manner from [plaintiff]." *Id*. Bob also stated that "if there were two vehicles from Minnesota at the residence that both of them were Leonard's and that if there was a blue car there that was Angela's." *Id*. Burch saw that all three of these vehicles were present.

Defendant Burch contacted a sergeant, who advised him to contact the "on call" district attorney. At about 10:20 p.m., the dispatcher connected Burch to defendant Calkins. Burch told Calkins that he believed that plaintiff was in Mazerek's residence and had a felony warrant from the DOC. Burch states that Calkins advised Burch that "he believed [Burch] had probable cause to enter the residence based on the felony warrant." *Id*. Calkins states that he does not remember the details of that conversation.

By this time, defendant Labroscian had arrived. Defendant Burch opened the unlocked door and announced "Sauk County Sheriff's Department. If you are in the residence you need to speak to me now." *Id*. No one answered. Burch repeated his statement but no one answered. Burch, Labroscian, and Pichler entered. Eventually they found plaintiff and Mazerek in a bedroom.

Defendant Burch told the dispatcher that he was with plaintiff and asked for confirmation of the warrant. Plaintiff stated that they did not have authority to enter the residence and asked to see the paper warrant. Burch said that they did not need to have the paper warrant, and that they were granted permission by the district attorney to enter the residence. Plaintiff stated that "he was not arguing 'that fact' however was arguing the fact that we were in the house illegally." *Id*. Plaintiff was arrested and was taken to the Sauk County Jail.

8

Ultimately, Burch did not believe that there was any concern about Mazerek's welfare. After Burch and plaintiff arrived at the jail, the warrant was confirmed, and plaintiff was turned over to jail staff.

ANALYSIS

Defendant Burch has filed a motion to dismiss and defendants Leon and Calkins have submitted a motion for summary judgment on threshold issues. Their motions raise intertwined issues that affect plaintiff's claims against all of the parties, so in addressing these motions I will move between the arguments raised in each of them.

**A.  Failure to serve Burch**

Defendant Burch contends that plaintiff's claims against him must be dismissed because plaintiff failed to properly serve him. Fed. R. Civ. P. 4(e)(2)(A) states that service may be accomplished by "delivering a copy of the summons and of the complaint to the individual personally." Plaintiff submitted the proof of service declaration filled out by Jon Micheal Kutz. Dkt. 4-1, at 2. The form lists several options by which to accomplish service. Kutz filled out the option concerning personal service, which includes preprinted language stating "I personally served the summons on the individual at (place)," and leaves the server to fill out the details. *Id*. Kutz filled in the blank with "Sauk County Sheriff Department at front entryway." *Id*.

In his brief, defendant Burch argues that "[t]here is no allegation, let alone proof, that Deputy Burch was served personally," Dkt. 94, at 4, and he provides his own affidavit stating that he was not personally served, Dkt. 114. But Kutz's declaration *is* proof of service. Indeed, a signed return of service generally is *prima facie* evidence of valid service that "can be

overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quotation omitted).

The problem is that the form is arguably ambiguous because of the statement that Kutz served Burch in the "entryway," which raises the concern that Kutz improperly handed the document to a county official at the entrance, similar to how one could serve a defendant at his "abode" under Rule 4(e)(2)(B), rather than correctly personally serving Burch.

This ambiguity should be easy to resolve: I will direct plaintiff to submit a declaration from Kutz explaining, under penalty of perjury, precisely how he served Burch. If it turns out that Kutz is indeed saying that he handed the summons to Burch, I will hold an evidentiary hearing on the matter. *Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015) (evidentiary hearing necessary to resolve factual disputes over service).

Even if this issue is ultimately resolved in plaintiff's favor, he will not be able to proceed with all of his claims against defendant Burch; as discussed below, I will dismiss some of these claims for alternate reasons raised by Burch.

**B.  Official capacity claims**

Plaintiff is attempting to sue all of the defendants in their official capacities. But as defendants Calkins and Leon argue in their motion for summary judgment, state officials cannot be sued for money damages in their official capacities because an official-capacity lawsuit is a suit against an official's office itself, and state agencies are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-71 (1989). This is true for Calkins even though he is the district attorney for Sauk County. *Omegbu v. Milwaukee Cty.*, 326 F. App'x 940, 942 (7th Cir. 2009) (county district attorney is

state employee who cannot be sued in official capacity). Therefore, I will grant Calkins and Leon's motion for summary judgment on plaintiff's official capacity claims against them.

## C. Notice of claim

Plaintiff labels "Count III" of his complaint as "assault and battery." Dkt. 1, at 13. These terms sound in state law. Construing plaintiff's pro se complaint generously, I will not limit plaintiff's claims about the manner in which his arrest or booking was handled only to state law assault and battery claims, but to the extent he does intend to bring state law claims against Burch, Calkins, and Leon, I must dismiss them.

Defendant Burch (as a county employee) and defendants Calkins and Leon (as state employees) each argue that plaintiff failed to comply with Wisconsin's "notice of claim" statutes. Wis. Stat §§ 893.80(1d)(a) (for local government officials); 893.82(3) (for state officials). Under these respective provisions, no action may be brought against a government official unless the plaintiff first submits written notice of the circumstances of the claim. *Id*. Plaintiff does not respond to the notice-of-claim arguments made by these defendants or provide any evidence that he has complied with the notice requirement, so I will grant defendants' motions as to any state-law claims against Burch, Calkins, and Leon.

## D. Apprehension request

Plaintiff names Elena Leon, his probation agent, as a defendant. He describes her as "the purported originator of the missing warrant." Dkt. 1, at 5. He also quotes at length from defendant Burch's police report, which he attaches to the complaint. In the report, Burch states that he relied in part on the DOC's "active felony warrant" in deciding to enter Mazerek's home and arrest plaintiff. In his complaint, plaintiff states, "No warrant existed!" Dkt. 1, at 12, but I do not take this to mean that plaintiff disagrees with the factual assertion

that Leon requested an apprehension request. (Even if that is what plaintiff was alleging, he does not properly dispute Leon's proposed finding that the apprehension request existed.) Rather, from his complaint and subsequent filings, I take plaintiff to mean that the apprehension request was not a proper *judicial* warrant, and that defendants did not have a proper warrant in hand at the time of arrest. *See, e.g.*, Dkt. 1, at 12 ("Defendant, Kevin Calkins, with his superior knowledge of the law, knew, or should have known, that an arrest without an arrest warrant in hand, signed by a competent judge or magistrate, and a Sworn Affidavit in Support, would be in direct violation of the Bill of Rights."); Dkt. 101, at 8 ("[Counsel] have verified there was not a judicial warrant available, or even existing, at the time of the breaking and entering, and eventual False Imprisonment of myself."). So I construe plaintiff's complaint as bringing a Fourth Amendment claim against defendant Leon either for taking part in the issuance of a warrant the DCC had no authority to grant, or alternatively, that the DCC has authority to issue warrants but unreasonably issued the one here.

If plaintiff contends that he may be taken into custody only under the authority of a judicial warrant, he is incorrect. As a probationer, plaintiff does not have the full range of Fourth Amendment rights afforded the public at large. The United States Supreme Court has concluded that "the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds,' as defined by the Wisconsin Supreme Court." *Griffin v. Wisconsin*, 483 U.S. 868, 876 (1987). So plaintiff can be taken into custody without a judicial warrant, but there still must be reasonable grounds for the apprehension request. *Id*.; *see also Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) ("we must determine whether the facts . . . show that

[parole officer] requested the warrant without reasonable suspicion to believe that Knox had violated his [supervised release agreement]").

Defendant Leon contends that she has absolute immunity from a claim that she did not have reasonable grounds to seek an apprehension request. Absolute immunity for acts by nonjudicial government officers is determined on the basis of "a functional approach." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir.1996). "Absolute immunity is only accorded for limited functions; '[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). Probation officers are entitled to absolute immunity "'for their activities that are analogous to those performed by judges.'" *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (quoting *Wilson*, 86 F.3d at 1444). "These include, for example, acts associated with the decision to grant, revoke, or deny parole, or the signing of an arrest warrant." *Id.*

Defendant Leon fails to persuade me that she is entitled to absolute immunity under this functional approach. Her proposed findings of fact are vague about her role in the issuance of the apprehension request; she states that she "staffed [plaintiff's] case with . . . [her] supervisor, and we concurred that given [plaintiff's] unknown whereabouts, DCC should issue an Apprehension Request," and then that "DCC issued an Apprehension Request." Dkt. 89, at 6, ¶¶ 32, 35. Construing the facts in plaintiff's favor, I can infer that Leon's role was gathering information and requesting the apprehension request, functions that do not receive absolute immunity, because they are more akin to a police officer requesting a warrant. *Knox*, 342 F.3d at 657-58 (parole officer could violate Fourth Amendment by requesting warrant without reasonable suspicion to believe that parolee

13

violated terms of parole). Under this standard, "a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Id*. at 658.

Defendant Leon argues in the alternative that she is entitled to qualified immunity on the Fourth Amendment claim against her. Qualified immunity shields public officials from suit for money damages unless a plaintiff shows: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether a right is "clearly established," courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The right must be established "at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013).

I conclude that Leon is entitled to qualified immunity. Plaintiff does not properly dispute any of Leon's proposed findings regarding her contacts with plaintiff and the reasons she had to believe that plaintiff had changed residences without alerting Leon to his whereabouts. No reasonable jury could determine that Leon intentionally or recklessly made false statements about plaintiff in requesting the apprehension request, and nothing in Leon's conduct violated a clearly established right of plaintiff's. I am somewhat sympathetic to plaintiff's position that it was unnecessarily harsh to seek his arrest for a short-term breakdown in communication about his residence, but Leon did not violate plaintiff's probation-limited Fourth Amendment rights by doing so.

### E.  Entry and arrest

Both Burch, in his motion to dismiss, and Calkins, in his motion for summary judgment on threshold issues, argue that the entry into Mazerek's home was justified both by the warrant and by exigent circumstances—that the officers had reason to believe that Mazerek was in danger. I will not address the exigent circumstances argument because, as stated above, the parties have not provided sufficient proposed findings about Burch's and the Baraboo officers' observations the night of the arrest, and I hesitate to assume that plaintiff concedes every fact spelled out in Burch's report merely because plaintiff quotes the report in his complaint.

Nonetheless, plaintiff's Fourth Amendment claims regarding the entry into Mazerek's home and the fact of his arrest are doomed by the undisputed fact that the DCC issued an apprehension request. Police are generally allowed to enter a person's home to arrest that person pursuant to a warrant. *Payton v. New York*, 445 U.S. 573, 602-03 (1980). A recent Seventh Circuit case applied *Payton* in an almost identical factual scenario. *Cook v. O'Neill*, 803 F.3d 296, 299 (7th Cir. 2015), *reh'g and suggestion for reh'g en banc denied* (Nov. 12, 2015). In that case, officers arrested parolee Cook at his girlfriend's apartment. The court considered whether the girlfriend (Thede) had consented to officers entering her apartment or whether there were exigent circumstances. The court concluded that those rationales did not matter because the parole warrant made the officers' entry reasonable, even though they were not aware that there was an outstanding warrant at the time:

> Now suppose Thede and Cook had been co-owners or co-occupants of the apartment and one or both of them had objected to entry by the police, and in addition that there had been no emergency justifying entry. Would that have changed the outcome of this case? No. The warrant to arrest Cook for violating parole is the key to this conclusion. . . .

15

It's true that . . . the warrant in our case was for a parole violation, which might not be a felony (the record is silent on this point). But persons on parole have a diminished right of privacy, because parole is a form of custody, and so an arrest warrant for violation of parole would entitle officers to enter the parolee's home to arrest him. Anyway Cook was not a resident of Thede's apartment, and obviously the subject of an arrest warrant has no greater expectation of privacy if he is visiting someone rather than being at home.

The arrest warrant was all that the police needed in order to be justified in arresting Cook (setting to one side their justification based on an emergency situation). They didn't know there was a warrant for his arrest, however, and we must consider whether that should matter. We think not . . . . The officers who arrested Cook had not been told to arrest him because of the warrant outstanding against him; had they been told, they could have arrested him lawfully without knowing the basis on which the warrant had been issued. But what they did in arresting Cook was exactly what they would have done had they known about the warrant. They did the right thing without knowing it was the right thing; and since they did the right thing Cook has no valid objection.

*Cook*, 803 F.3d at 299-300 (citations omitted).

At the very least, *Cook* makes plain that there is no clearly established law showing that defendant Calkins violated the Fourth Amendment by advising Burch that he could enter the house and arrest plaintiff, or that defendant Burch and the Baraboo officers violated the Fourth Amendment by following through with the entry and arrest. This is so even if, as plaintiff suggests, Calkins and the officers did not have the apprehension request in hand. Therefore, I will grant Calkins's motion for summary judgment on qualified immunity grounds.

Defendant Burch's motion is technically one to dismiss that relies on facts in Burch's report that are quoted in plaintiff's complaint. Because I do not take those quoted passages as plaintiff vouching for the truth of those statements, I will not grant Burch's motion on the

16

ground that plaintiff's complaint fails to state a claim upon which relief may be granted. But given the undisputed facts provided by defendant Leon about the existence of the apprehension request, I conclude that Burch's argument based on *Payton* is correct, so I will dismiss plaintiff's Fourth Amendment claim against Burch concerning the entry into Mazerek's home and the fact of his arrest (I address the claims relating to the manner in which the arrest was effectuated in the next section). Similarly, although defendants Labroscian, Pichler, and Schauf have not yet filed a dispositive motion of their own, I will dismiss plaintiff's parallel Fourth Amendment claims against them because they clearly have qualified immunity for the same reasons as Burch.

## F.  Excessive force/assault

As discussed above, plaintiff brings claims with the label "assault and battery," but I will not hold plaintiff to only state law theories on these claims, because pro se plaintiffs are generally not required to plead particular legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("particularly since [plaintiff] filed his complaint pro se, he should not be held to the . . . incorrect theor[ies] he did name.").

Allegations about "excessive force" used in an arrest may also state a claim for unreasonable seizure under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). This type of claim requires an analysis of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

I see two sets of allegations that plaintiff might intend to support this type of a claim. In the section of his complaint titled "assault and battery," he alleges:

> Due to the unlawful acts of the Defendants, Plaintiffs each suffered a series of assaults and batteries upon his/her person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, and harassment.

Dkt. 1, at 13. However, this is merely a list of things that happen to someone after arrest. This allegation does not plausibility support any claim for relief.

But plaintiff also alleges that he "was in bed sleeping, along with Girlfriend, Angela, when we were awakened by Bright Lights shined into our eyes and someone shouting at us with Guns drawn, and pointed at our heads." Dkt. 1, at 11. Pointing a gun at someone who poses no danger can violate the Fourth Amendment. *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) (discussing cases in which courts have held that pointing of gun by officer was unreasonable).

Defendant Burch argues that plaintiff's allegations fail to state a Fourth Amendment "excessive force" claim, because the excerpts of Burch's report in plaintiff's complaint show that there was reason for the officers to use precautions against possible violence by plaintiff. But as I have already stated, I will not assume that plaintiff means to allege that each fact in Burch's report is true. Without further information from the parties about how plaintiff's arrest was effectuated, I cannot say as a matter of law that his claims fail under the *Graham* analysis.

As for any potential state-law claims, I have already dismissed plaintiff's claims against Burch on notice-of-claim grounds. But the Baraboo Police Department defendants did not file a notice-of-claim motion, so plaintiff may still bring state-law claims against them, as well as the Fourth Amendment excessive force claims discussed above. The parties do not discuss what these claim might be, but Wisconsin-law assault seems like the likely fit. *See* WIS JI—

18

Civil 2004 (assault requires intent to cause physical harm or intent to make plaintiff fear harm is imminent).

## G. Surviving claims

As discussed above, many of plaintiff's claims are dismissed in this opinion. Defendants Leon and Calkins are dismissed from the case because all of plaintiff's clams against them are dismissed. Accordingly, the only claims that remain in the case are plaintiff's Fourth Amendment excessive force claims against defendants Burch, Labroscian, Pichler, and Schauf, and plaintiff's parallel state-law assault claims against Labroscian, Pichler, and Schauf.

## ORDER

IT IS ORDERED that:

1. Plaintiff Leonard John Sundsmo's motion for my recusal, Dkt. 100, is DENIED.

2. Defendants Elena Leon and Kevin Calkins's motion for summary judgment on threshold issues, Dkt. 84, is GRANTED. Defendants Leon and Calkins are DISMISSED from the case.

3. Defendant Derek Burch's motion to dismiss, Dkt. 94 is GRANTED in part and DENIED in part as discussed in the opinion above. Plaintiff's claims against Burch for violation of the Fourth Amendment in entering Angela Mazerek's residence and in the fact that plaintiff was arrested are DISMISSED. Any state-law claims plaintiff brought against Burch are also DISMISSED.

4. Plaintiff's claims against defendants Ryan Labroscian, Mike Pichler, and Mark Schauf for violation of the Fourth Amendment in entering Angela Mazerek's residence and in the fact that plaintiff was arrested are DISMISSED.

5. Plaintiff may have until April 4, 2016, to submit a declaration from Jon Micheal Kutz explaining, under penalty of perjury, precisely how he served defendant Burch.

Entered March 14, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge